**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x

*IN RE* SPERO THERAPEUTICS, INC.                    **MEMORANDUM**
SECURITIES LITIGATION                               **AND ORDER**

                                                    **22-CV-3125 (LDH) (RLM)**
                                                    **22-CV-4154 (LDH) (RLM)**

-----------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      Currently pending before this Court is the unopposed motion of Kashif Memon

("Memon") for appointment as lead plaintiff and approval of lead counsel.[1]  See generally

Motion of Kashif Memon for Consolidation, Appointment as Lead Plaintiff, and Approval of

Lead Counsel (July 25, 2022) ("Memon Mot."), Electronic Case Filing ("ECF") Docket Entry

("DE") #9; Memon's Memorandum of Law in Support of Motion (July 25, 2022) ("Memon

Mem."), DE #9-2.  For the following reasons, this Court grants Memon's motion: Memon is

hereby appointed as lead plaintiff and Memon's choice of counsel—Pomerantz LLP

("Pomerantz")—is approved as lead counsel.[2]

---

[1] As discussed *infra*, another movant—Nabil Saad ("Saad")—also timely filed a motion to be appointed lead plaintiff.  Saad, however, subsequently filed a notice of non-opposition to Memon's motion.  Accordingly, the Court denies Saad's motion as moot.

[2] An order appointing lead plaintiff and approving lead counsel qualifies as a non-dispositive matter under Rule 72(a) of the Federal Rules of Civil Procedure (the "FRCP"), allowing this Court to issue a written order (i.e., a Memorandum and Order), rather than a recommended disposition (i.e., a Report and Recommendation).  See Fed. R. Civ. P. 72(a).  Multiple courts, including ones in this District, have concluded that such motions are non-dispositive and may be disposed of by a magistrate judge.  See, e.g., Darish v. N. Dynasty Mins. Ltd., 20-cv-5917 (ENV), 2021 WL 1026567, at *1 n.3 (E.D.N.Y. Mar. 17, 2021) (collecting cases).

## BACKGROUND

On May 26, 2022, plaintiff Richard S. Germond ("plaintiff Germond"), who is also represented by Pomerantz, commenced this matter by filing a class action complaint against Spero Therapeutics, Inc. ("Spero") and individual defendants Ankit Mahadevia and Satyavrat Shukla, both of whom hold officer-level positions at the company (collectively, "defendants"). See generally Complaint (May 26, 2022) ("Compl."), DE #1.  The Complaint sets forth claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  See Compl. ¶¶ 10, 42-57.  The foregoing claims are asserted on behalf of all putative class members who purchased or otherwise acquired Spero securities between October 28, 2021 and May 2, 2022, inclusive of both dates (the "Class Period").[3]  See id. ¶ 1.

Corporate defendant Spero is a "clinical-stage biopharmaceutical company, [which] focuses on identifying, developing, and commercializing treatments for multi-drug resistant . . . bacterial infections and rare diseases in the United States."  Id. ¶ 2.  Spero's "product candidates include Tebipenem Pivoxil Hydrobromide (HBr), an oral carbapenem-class antibiotic to treat complicated urinary tract infections[.]"  Id.  According to the Complaint, on October 28, 2021, Spero issued a press release stating that it had submitted a new drug application for the Tebipenem HBr tablets to the U.S. Food and Drug Administration (the

---

[3] On July 15, 2022, Memon also filed a class action complaint in this Court against defendants—styled Memon v. Spero Therapeutics, Inc. et al, 22-cv-4154 (the "Memon Action")—which alleges substantially the same or similar facts, but asserts an enlarged class period of from May 6, 2021 until May 2, 2022, inclusive of both dates.  See Complaint in 22-cv-4154 (July 15, 2022) (the "Memon Complaint"), DE #1; *infra* note 4.  The two cases were subsequently consolidated.  See *infra* note 5.

"FDA"). <u>See</u> <u>id.</u> ¶¶ 3, 22-23.[4]  Subsequently, on November 10, 2021, Spero issued a press release on the Tebipenem HBr tablets and held an earnings call with investors to discuss Spero's third-quarter 2021 results.  <u>See</u> <u>id.</u> ¶¶ 24-25.  On January 3, 2022, Spero issued a second press release announcing, amongst other things, that the FDA had granted priority review designation and accepted the new drug application for said tablets.  <u>See</u> <u>id.</u> ¶ 26.  The Complaint alleges that the representations made by defendants in the foregoing earnings call and press releases were false and/or misleading because defendants failed to disclose that "the data submitted in support of the [new drug application for] Tebipenem HBr were insufficient to obtain FDA approval" and "accordingly, it was unlikely that the FDA would approve the Tebipenem HBr [new drug application] in its current form[.]"  <u>Id.</u> ¶ 27.  Defendants also allegedly failed to disclose that, due to the foregoing issues, Spero would need to significantly reduce its workforce and restructure its operations.  <u>See</u> <u>id.</u>

On March 31, 2022, Spero issued one of two corrective disclosures in the form of a press release, which revealed that the FDA had "identified deficiencies that preclude[d] discussion of labeling and post-marketing requirements/commitments" for the Tebipenem HBr tablets.  <u>Id.</u> ¶ 28.  Following this press release, "Spero's stock price fell $1.59 per share, or 18.27%, to close at $7.11 per share on April 1, 2022."  <u>Id.</u> ¶ 29.  Then, on May 3, 2022, Spero announced in a second press release that the FDA had identified "substantive review issues," and, in light of this feedback, Spero would be "immediately defer[ring] current commercialization activities for [T]ebipenem HBr[.]"  <u>Id.</u> ¶ 30.  Spero further announced that

---

[4] The Memon Complaint, with its enlarged class period, includes references to a press release issued by Spero on May 6, 2021, which proclaimed that the company was "off to a strong start in 2021" and had "completed a pre-NDA meeting for [T]ebipenem HBr with the FDA."  <u>See</u> Memon Complaint ¶ 23, in 22-cv-4154.

it planned to reduce its workforce by approximately 75 percent, restructure its operations to reduce costs, and reallocate resources toward other clinical development programs. See id. On the same day, "Spero's stock price fell $3.24 per share, or 63.65%, to close at $1.85 per share[.]" Id. ¶ 31.

On July 25, 2022, after the Complaint was filed, Memon and Saad each timely moved to be appointed lead plaintiff in the instant class action.[5] See generally Memon Mot., DE #9; Motion of Nabil Saad for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Counsel (July 25, 2022), DE #6. Memon claims to have suffered $163,918 in financial losses, see Memon Mem. at 2, DE #9-2; Memon Damages Analysis (July 25, 2022) at 6, DE #9-4, whereas Saad purports to have suffered $92,072.53 in financial losses, see Saad Mem. at 7, DE #7; Saad Loss Chart (July 25, 2022) at 2, DE #8-3.

Initially, movant Saad opposed Memon's motion for appointment as lead plaintiff, raising questions concerning Memon's financial interest and loss calculation. See generally Saad Opposition to Memon's Motion (Aug. 8, 2022) ("Saad Opp."), DE #12. More specifically, Saad asserted that Memon lacks a "*bona fide* financial interest" in this action because (1) Memon claims "to have sold 5,852 more shares than he certified he owned on June 30, 2021" and (2) Memon "certified that he engaged in at least 19 transactions that occurred at

---

[5] On July 22, 2022, Memon, plaintiff Germond, and defendants jointly moved to consolidate the Memon Action with the first-filed action and filed a joint stipulation to that effect. See generally Motion to Consolidate Cases (July 22, 2022), DE #5. Because this request remained outstanding at the time of their submissions, Memon's and Saad's motions also include requests for consolidation. See Memon Mem. at 4-5, DE #9-2; Saad Memorandum in Support of Motion (July 25, 2022) ("Saad Mem.") at 4-5, DE #7. In light of the previous stipulation, however, the Honorable LaShann DeArcy Hall referred the two movants' motions to the undersigned magistrate judge for a determination limited to the appointment of lead plaintiff and lead counsel. See Referral Order (Aug. 3, 2022). Subsequently, on August 5, 2022, Judge DeArcy Hall so-ordered the parties' proposed stipulation and consolidated the two related actions. See Stipulation and Order Consolidating Related Actions and Extending Defendants' Time to Respond to Complaints (Aug. 5, 2022), DE #10.

prices outside the daily range on the days they were purportedly executed[.]"  Id. at 1-2.

Several days later, however, Saad filed a notice of non-opposition to Memon's motion to be

appointed lead plaintiff, in which Saad attributes his change in position to the fact that his

counsel "subsequently conferred with Mr. Memon's counsel regarding the potential issues"

and that, "as a result of the conference, and upon further review of the record in the action,

Mr. Saad no longer opposes Mr. Memon's motion."  Saad Notice of Non-Opposition (Aug.

15, 2022) ("Saad Non-Opposition") at 1, DE #13.

Memon thereafter filed a reply, wherein Memon's counsel clarifies that "Memon's

Certification [] inadvertently omit[ted] certain purchases of Spero stock that occurred prior to

the Class Period" and, taking these omitted stock purchases into account, Memon's total loss is

$252,682.  Memon Reply in Further Support of Motion (Aug. 15, 2022) ("Memon Reply") at

3 n.2, DE #14.  Memon's counsel further represents that Memon's Amended Certification

accurately sets forth Memon's purchases and sales of Spero stock during the Class Period.  See

id.; see generally Amended Certification (Aug. 15, 2022), DE #14-2.

Having determined that further information was required, the Court directed Memon to

"supplement his submissions to address the purported issues concerning his loss calculation and

candidacy for appointment as lead plaintiff, as outlined by Saad in his original Opposition."

Order deferring ruling on . . . Motion to Appoint Counsel and Lead Plaintiff (Aug. 19, 2022).

Memon timely supplemented his submissions on August 24, 2022.  See generally Memon

Supplemental Memorandum of Law in Further Support of Motion (Aug. 24, 2022) ("Memon

Supp. Mem."), DE #15.  In his supplemental memorandum, Memon contends that his original

Certification's omission of certain stocks purchased prior to the Class Period does not violate

the PSLRA and, thus, his certification was not defective on this ground.  See id. at 3.  Memon further represents that he cured his failure to include two of his purchases of Spero stock (totaling 200 shares) during the Class Period by filing the Amended Certification, which accounts for these purchases.  See id. at 3-4.  Finally, Memon argues that there are no "discrepancies" in his transaction prices for Spero stock because "all of the 19 transactions flagged by [Saad] were at prices within the relevant pre- or post-market price ranges on the dates in question."  Id. at 5.  In support of his argument, Memon has provided a chart listing the date, price, and pre- and post-market range for each of the relevant transactions.  See id.

## DISCUSSION

### I.    Appointment of Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in cases involving claims under the Exchange Act.  The PSLRA's legislative history reveals that Congress enacted the law in response to class action abuses, as plaintiffs' lawyers would otherwise "race to the courthouse" to secure the lead plaintiff designation.  In re Olsten Corp. Sec. Litig., 3 F.Supp.2d 286, 294 (E.D.N.Y. 1998) (citation omitted), adhered to on reconsideration sub nom. In re Olsten, 181 F.R.D. 218 (E.D.N.Y. 1998).  "By enacting the PSLRA, Congress intended to 'increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel.'"  Id. (quoting H.R. Rep. No. 104-369 at 32 (1995)).

Procedurally, the law directs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of

adequately representing the interests of class members" (generally known as the "most adequate plaintiff"). 15 U.S.C. § 78u-4(a)(3)(B)(i). "Courts follow a two-step process to determine the most adequate plaintiff." Darish, 2021 WL 1026567, at *5 (citing In re Gentiva Sec. Litig., 281 F.R.D. 108, 111-12 (E.D.N.Y. 2012)). In the first stage of the inquiry, the PSLRA establishes a "presumption" that the most adequate plaintiff is the person or group of persons who or that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once the court determines that there exists a presumptively adequate lead plaintiff, it must move to the second stage of the inquiry: whether that presumption has been sufficiently rebutted by any member of the purported plaintiff class. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Specifically, the presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff--

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

Id.

A.    **Timely Notification and Filing**

As an initial matter, the PSLRA requires that the plaintiff who files the *first* action

publish notice to the class within 20 days of filing the action in "a widely circulated national

business-oriented publication or wire service," advising members:

> (I) of the pendency of the action, the claims asserted therein, and the purported
> class period; and

> (II) that, not later than 60 days after the date on which the notice is published,
> any member of the purported class may move the court to serve as lead plaintiff
> of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

On May 26, 2022—the same day the Complaint was filed—Pomerantz, as counsel for

plaintiff Germond, published a notice in *Globe Newswire* announcing that a securities class

action had been filed against defendants.  See generally Press Release (docketed on July 25,

2022), DE #9-5.  This press release described the claims being asserted against defendants, as

well as the dates of the purported class period.  See id. at 2-4.  The published notice further

advised that those qualifying shareholders of Spero securities wishing to serve as lead plaintiff

in the purported class action should apply to the Court for the designation by July 25, 2022.

See id. at 2.  No moving party has challenged the adequacy of the May 26, 2022 notice, and

the filing of a press release through *Globe Newswire* is an appropriate means of satisfying the

PSLRA's notice requirement.  See 15 U.S.C. § 78u-4(a)(3)(A)(i); see, e.g., Parot v. Clarivate

Plc, 22-cv-394 (ARR), 2022 WL 1568735, at *3 (E.D.N.Y. May 18, 2022) ("[T]he filing of a

press release through *Globe Newswire* is an appropriate means of satisfying the PSLRA's

notice requirement." (citations omitted)); Gutman v. Lizhi Inc., 21-CV-00317 (LDH)(PK),

2021 WL 8316283, at *1 (E.D.N.Y. Apr. 28, 2021) (finding plaintiff complied with PSLRA notice requirement by timely publishing press release in *Globe Newswire*).

Based on the May 26, 2022 publication date, the 60-day period in which members of the proposed class could move to serve as lead plaintiff of said class expired on July 25, 2022. Having filed his motion on July 25, 2022, Memon has timely moved for lead plaintiff status. See generally Memon Mot., DE #9.  In the absence of any objection to the May 26, 2022 notice, and because Memon has complied with the PSLRA's 60-day deadline to move to serve as lead plaintiff of the putative class, the Court must next consider whether Memon has the largest financial interest, see 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), and, if so, whether Memon also satisfies the requirements of Rule 23 of the FRCP, see 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

### B.   Largest Financial Interest

#### 1.   *Legal Standard*

The PSLRA requires courts to "adopt a presumption that the most adequate plaintiff . . . has the largest financial interest in the relief sought by the class[,]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), but offers no statutory guidance for determining which plaintiff has the largest financial interest, see Darish, 2021 WL 1026567, at *5; *In re* Gentiva, 281 F.R.D. at 112.  Courts in the Second Circuit have adopted the four "*Olsten* factors" to determine which movant has the largest financial interest: "(1) the [total] number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period."  *In re* Olsten, 3 F.Supp.2d at 295 (citing Lax v. First Merchs. Acceptance

Corp., No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); accord Chitturi v. Kingold Jewelry, Inc., 20-CV-2886-LDH-SJB, 2020 WL 8225336, at *4 (E.D.N.Y. Dec. 22, 2020); In re Gentiva, 281 F.R.D. at 112.  Most crucial to the Court's determination is the fourth factor—the approximate financial losses suffered.  See Plymouth Cnty. Ret. Ass'n v. Innovative Tech., Inc., 21 Civ. 4390 (VM), 2021 WL 4298191, at *2 (S.D.N.Y. Sept. 21, 2021), adhered to on reconsideration sub nom. Plymouth Cnty. Ret. Ass'n v. Array Tech., Inc., 2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021); Darish, 2021 WL 1026567, at *5; Baughman v. Pall Corp., 250 F.R.D. 121, 125 (E.D.N.Y. 2008).  In the instant case, only movant Memon still claims to possess the largest financial interest in this litigation.  For the reasons set forth below, the Court concludes that Memon has suffered the greatest loss and is therefore the movant with the largest financial interest.

## 2. *Relevant Class Period*

In calculating his financial losses, Memon apparently relies upon the class period set forth in the Memon Complaint: May 6, 2021 until May 2, 2022, inclusive of both dates.  See Memon Mem. at 1 n.1, DE #9-2 ("[T]o avoid excluding any potential class members, [Memon's] motion has adopted the larger class period alleged in the *Memon* Action.").  As an initial matter, the Court addresses whether Memon may properly utilize this enlarged class period, as opposed to the shorter class period of October 28, 2021 until May 2, 2022, inclusive of both dates, as set forth in the Complaint filed by plaintiff Germond and the corresponding PSLRA notice.  See id.; Compl. ¶ 1; Press Release at 2, DE #9-5.

 "A number of courts in this [Circuit] have found it appropriate to rely on the more inclusive class for determining lead plaintiff because 'it encompasses more potential class

members.'" Hom v. Vale, S.A., 1:15-cv-9539-GHW, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) (citing In re Doral Fin. Corp. Sec. Litig., 414 F.Supp.2d 398, 402–03 (S.D.N.Y. 2006); Villella v. Chem. & Mining Co. of Chile Inc., Nos. 15 Civ. 2106(ER), 2015 WL 6029950, at *5 n.5 (S.D.N.Y. Oct. 14, 2015); In re Elan Corp. Sec. Litig., No. 1:08–cv–08761–AKH, 2009 WL 1321167, at *1 (S.D.N.Y. May 11, 2009); In re Gentiva, 281 F.R.D. at 113-14). Accordingly, consistent with these decisions, this Court finds that utilizing the enlarged class period in the second-filed complaint is appropriate, given that it will (as Memon points out) "avoid excluding any potential class members," Memon Mem. at 1 n.1, DE #9-2, and encompass more potential damages.

Application of this longer class period is proper even though the press release issued by Pomerantz on behalf of plaintiff Germond incorporated the shorter class period in its announcement of the class action. See Press Release at 2, DE #9-5. "The plain text of the [PSLRA] provides that, where a subsequent action asserts 'substantially the same claim or claims … only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published.'" Hom, 2016 WL 880201, at *4 (quoting 15 U.S.C. § 78u–4(a)(3)(A)(ii)). "Based on this statutory text, courts typically 'disfavor republication of notice under PSLRA when a class period is extended beyond the period contained in the first-filed securities class action.'" Id. (citation omitted). Generally, courts require republication of notice only "where the amended complaint substantially alters the claims or class members." Id. (citation omitted).

Here, plaintiff Germond filed the first complaint on May 26, 2022, and timely issued a notice advising potential class members of the action and the deadline for applying for the

position of lead plaintiff, thereby complying with the requirements of the PSLRA.  See Press Release at 2, DE #9-5.  Moreover, the enlargement of the class period by approximately six months does not substantially alter the composition of the class and is within the range of enlargements deemed modest by other courts, so as not to necessitate republication of the PSLRA notice.  See, e.g., Hom, 2016 WL 880201, at *3-4 (finding that enlargement of class period from approximately eight months to more than 2 years in the amended complaint did not substantially alter the class members); cf. Kaplan v. S.A.C. Capital Advisors, L.P., 947 F.Supp.2d 366, 367 (S.D.N.Y. 2013) (finding that republication of notice was warranted where the first-filed complaint included an original class period of only nine days and the consolidated class-action complaint expanded that period by more than two years and added new claims).  As such, the Court finds that republication of the PSLRA notice is unnecessary.

### 3.    Analysis of Largest Financial Interest

When utilizing the longer class period alleged in the Memon Action, it is readily apparent that Memon has sustained the larger financial loss:[6] Memon sustained $252,682 in losses,[7] see Memon Reply at 3 n.2, DE #14, as compared with Saad's losses of $92,072.53,

---

[6] While Memon initially claimed to have suffered $163,918 in losses, see Memon Mem. at 2, DE #9-2, he later amended his certification to account for two additional purchases of stock totaling 200 shares, which he purchased during the longer class period set forth in the Memon Complaint, and which resulted in an increased loss total of $252,682, see Memon Reply at 3 n.2, DE #14.  Both loss figures are greater than those sustained by Saad and, thus, the analysis set forth in this subsection remains unchanged regardless of whether the original or amended loss figure is considered.

[7] Memon apparently uses the "First-In-First-Out" (or "FIFO") calculation method in determining his total loss amount, see generally Memon Damages Analysis, DE #9-4; this calculation method assumes that "the first stocks to be sold are the stocks that were acquired first[,]" Sallustro v. CannaVest Corp., 93 F.Supp.3d 265, 270 n.5 (S.D.N.Y. 2015) (citation omitted).  While the "Last-In-First-Out" or "LIFO" method is largely preferred over the FIFO method, the Second Circuit has yet to adopt a "categorical rule for the appropriate measurement of losses where[, as here,] there is a pre-existing inventory of stock followed by purchases and sales during the class period[.]"  Id.  Use of the FIFO method is not automatically disqualifying.  See Ellenburg v. JA Solar Holdings Co. Ltd., 262 F.R.D. 262, 265 (S.D.N.Y. 2009).  Thus, at this early stage of the litigation, "it is sufficient [for

see Saad Mem. at 7, DE #7.  This factor is the most crucial of the *Olsten* factors and weighs heavily in favor of finding that Memon has the greatest financial interest.

Movant Saad previously raised two main issues concerning Memon's financial interest in this litigation.  See Saad Opp. at 2-4, DE #12.  While Saad has retracted his concerns with respect to these purported discrepancies, see Saad Non-Opposition at 1, DE #13, the Court nevertheless addresses (and disposes of) each of these so-called issues in turn.

First, Saad questioned whether Memon had correctly calculated his losses, citing the fact that Memon claims to have sold 5,852 more shares than he certified he owned as of June 30, 2021, yet Memon's certification "does not indicate in his loss chart that he had any opening position of Spero stock." Saad Opp. at 2, DE #12.  As Memon explains in his supplemental memorandum, he *did* own shares of Spero stock prior to the enlarged class period, see Memon Supp. Mem. at 3, DE #15, and he permissibly accounted for these shares in his loss calculations.  Contrary to Saad's subsequently retracted assertions, Memon's certification also complies with the PSLRA's requirement that a movant's certification set "forth all of the transactions of the plaintiff in the security that is the subject of the complaint *during* the class period specified in the complaint[.]"  15 U.S.C. § 78u-4(a)(2)(A)(iv) (emphasis added).  The plain text of the PSLRA does not require that transactions occurring prior to the applicable class period be included in said certification.

In addition, Saad also characterized 19 of Memon's transactions as "discrepancies" because the prices of these transactions fell outside the given market range for the date on which they occurred.  See Saad Opp. at 1, DE #12; Saad Analysis of Memon's Transactions

---

the Court] to find that, under any analysis, the financial interest of [Memon] exceeds that of [Saad]." Hom, 2016 WL 880201, at *5 n.2.

(Aug. 8, 2022) at 2, DE #12-2.  More specifically, Saad complained that "Memon does not explain the[se] discrepancies."  Saad Opp. at 1, DE #12.  But Memon later clarified that his transactions were outside the market range because his "trades occurred before or after market trading hours (i.e., pre- or post-market) on those dates[.]"  Memon Supp. Mem. at 4, DE #15.  Further, in his supplemental submissions, Memon also included a detailed chart showing that the 19 transactions in question were purchased or sold at prices *within* the pre- and post-market range for the given dates of the transactions.[8]  See id. at 5.  While the factual context in which Memon transacted these trades is not entirely clear, "this [is an] issue [that] may be revisited once any amended pleading is filed[,]" after the issuance of this Order.  Gordon, 962 F.Supp.2d at 531.  Thus, contrary to Saad's initial opposition to Memon's motion, these transactions do not constitute unexplained discrepancies and are not necessarily disqualifying.

In sum, having reviewed Memon's supplemental submissions and addressed Saad's concerns, the Court concludes that Memon is the movant with the largest financial interest.

## C.    Satisfaction of Rule 23

Having identified Memon as the plaintiff with the greatest loss and thus the largest financial interest in the litigation, the Court must now "focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements [of the PSLRA]." Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc., 229 F.R.D. 395, 411 (S.D.N.Y. 2004) (citations and internal quotations omitted); accord Khunt v.

---

[8] The record does not support Saad's earlier suggestion that Memon may have been a "short seller" and therefore subject to unique defenses.  See Saad Opp. at 3 n.2, DE #12.  Moreover, the fact that Memon may have traded "after hours" or "outside the market range does not . . . necessarily imply that he did not rely on the assumption that the market price reflected all available information."  Gordon v. Sonar Capital Mgmt. LLC, 962 F.Supp.2d 525, 531 (S.D.N.Y. 2013) (citation omitted).

Alibaba Group Holding Ltd., 102 F.Supp.3d 523, 535 (S.D.N.Y. 2015); Darish, 2021 WL 1026567, at *6.  Under the PSLRA, in order to serve as lead plaintiff, the movant with the largest financial interest must also satisfy the requirements of Rule 23 of the FRCP.  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) specifies four requirements for certification of a class action: numerosity, commonality, typicality, and adequacy.  See Fed. R. Civ. P. 23(a).

Nevertheless, in determining whether the presumptively most adequate lead plaintiff satisfies Rule 23 for the purposes of the PSLRA, a court need only consider whether that movant's claims are typical and adequate, and the presumptive lead plaintiff need only make a preliminary, prima facie showing as to these two requirements.  See In re Olsten, 3 F.Supp.2d at 296 ("[T]he party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." (citations omitted)); accord In re Gentiva, 281 F.R.D. at 112.  At this initial stage of the litigation, a "wide ranging analysis under Rule 23 is not appropriate . . . and should be left for consideration of a motion for class certification."  Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 252-53 (S.D.N.Y. 2003) (citations and quotations omitted); accord Darish, 2021 WL 1026567, at *6.[9]

### 1.   *Typicality*

Memon has made the requisite preliminary showing with respect to Rule 23(a)'s typicality requirement.  Cases in the Second Circuit have held that the typicality requirement is met where "each class member's claim arises from the same course of events, and each class

---

[9] "[A]ny finding that Rule 23 requirements have been met at this stage do[es] not preclude a later challenge in the context of a Rule 23 class certification motion."  Ford v. Voxx Int'l Corp., No. 14-CV-4183(JS)(AYS), 2015 WL 4393798, at *3 (E.D.N.Y. July 16, 2015) (citations omitted).

member makes similar legal arguments to prove the defendant's liability." Brady v. Top Ships Inc., 324 F.Supp.3d 335, 350 (E.D.N.Y. 2018) (quoting In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)).  Similar to other potential class members, Memon alleges that that defendants made certain misleading statements and/or failed to disclose certain material facts concerning Spero's new drug application for the Tebipenem HBr tablets; Memon further alleges that he "purchased Spero securities during the [enlarged] Class Period at prices artificially inflated by [d]efendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions."  Memon Mem. at 9-10, DE #9-2 ("The claims of Memon are typical of those of the Class.").  Thus, as the movant with the largest financial interest, Memon has preliminarily demonstrated typicality under Rule 23(a).

### 2. *Adequacy*

Memon has likewise preliminarily satisfied the adequacy requirement of Rule 23(a). The adequacy requirement is satisfied where: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  Kaplan v. Gelfond, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) (citations omitted), on reconsideration in part sub nom. In re IMAX Sec. Litig., 2009 WL 1905033 (S.D.N.Y. June 29, 2009); accord Plymouth Cnty. Ret. Ass'n, 2021 WL 4298191, at *2.

In the instant case, Memon's counsel—Jeremy A. Lieberman (a managing partner at Pomerantz)—concedes that he made two relatively minor errors in drafting Memon's submissions related to his request to be appointed lead plaintiff.  See Memon Reply at 3 n.2,

DE #14; Memon Supp. Mem. at 4 n.2, DE #15.  First, in Memon's original Certification, Mr. Lieberman inadvertently omitted two transactions (in the total amount of 200 shares) that occurred during the enlarged class period and should have been accounted for in Memon's loss calculation; Mr. Lieberman later remedied this mistake by submitting the Amended Certification on August 15, 2022.  Compare Original Certification (July 25, 2022) at 3-6, DE #9-6, with Amended Certification at 4, DE #14-2 (adding two transactions dated May 6, 2021 and May 10, 2021, respectively, for 100 shares of stock each).  Next, in Memon's reply, Mr. Lieberman incorrectly referred to these two transactions as having occurred "*prior to the Class Period*[,]" Memon Reply at 3 n.2, DE #14 (emphasis added), when, in fact, they occurred *during* the enlarged class period beginning on May 6, 2021—a misstep that Mr. Lieberman acknowledged and corrected in Memon's supplemental memorandum of law, see Memon Supp. Mem. at 4 n.2, DE #15.

"The goal of the PSLRA was not to select individuals for lead plaintiff who make no mistakes[.]"  Reitan v. China Mobile Games & Entm't Grp., Ltd., 68 F.Supp.3d 390, 399 (S.D.N.Y. 2014).  "[M]inor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement."  Khunt, 102 F.Supp.3d at 538-39 (quoting Niederklein v. PCS Edventures!.com, Inc., No. 1:10–cv–00479–EJL–CWD, 2011 WL 759553, at *11 (D. Idaho Feb. 24, 2011)).  Moreover, courts are permitted to consider untimely amended certifications in selecting the lead plaintiff if "the corrections to the certification do not prejudice any party to th[e] litigation, or any lead plaintiff movant, and '[c]ourts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties.'"  Silverberg v. DryShips

Inc., 17-CV-4547 (SJF)(ARL), 2018 WL 10669653, at *3 n.2 (E.D.N.Y. Aug. 21, 2018)

(quoting *In re* SLM Corp. Sec. Litig., Master File No. 08 Civ. 1029(WHP), 2012 WL

209095, at *8 (S.D.N.Y. Jan. 24, 2012)).

      In this Court's view, Memon's counsel's mistakes are relatively minor.  Indeed, these

are not the kind of errors that courts in this Circuit typically view as demonstrating a movant's

inadequacy to serve as lead plaintiff.  Cf. Rodriguez v. DraftKings Inc., 21 Civ. 5739 (PAE),

2021 WL 5282006, at *5-6, *9 (S.D.N.Y. Nov. 12, 2021) (finding that the movant's

"significant" and "numerous and varied errors" and inconsistencies in his lead plaintiff

submissions rose to the level of "slovenliness" and therefore called into doubt his adequacy

where there were myriad inconsistencies between the movant's PSLRA certification and loss

chart, omissions in the PSLRA certification, and incorrect treatment of sales as losses—all of

which necessitated the submission of a memorandum and an "affidavit from the accountant

who prepared his loss chart, describing what went wrong"); Karp v. Diebold Nixdorf, Inc., 19

Civ. 6180(LAP), 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) (finding that the

movants failed to satisfy adequacy showing where they *overcalculated* their losses by 34

percent), adhered to on reconsideration, 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019); *In re*

NYSE Specialists Sec. Litig., 240 F.R.D. 128, 144-45 (S.D.N.Y. 2007) (movant failed to

ensure that the complaint and lead plaintiff motion were filed by the entity that actually

purchased shares during the class period); see also Savino v. Comput. Credit, Inc., 164 F.3d

81, 87 (2d Cir. 1998) (affirming denial of motion for class certification where movant offered

"differing accounts about the letters that form[ed] the very basis for his lawsuit").

Mr. Lieberman's mistakes do not prejudice any party to this litigation or the sole other movant—i.e., Saad—who has since withdrawn his opposition to Memon's appointment as lead plaintiff.  Nor is there any evidence of bad faith or an intent to deceive on the part of Pomerantz, as Mr. Lieberman readily identified and admitted his mistakes in Memon's subsequent submissions when addressing Saad's unrelated concerns.  Accordingly, the Court is satisfied that, based on the firm's experience and credentials (as discussed *infra*), Pomerantz is experienced and well-qualified to conduct the class action securities litigation at hand.  Moreover, Memon maintains a sufficient financial interest in the outcome of the case with respect to all claims under the Exchange Act to vigorously advocate on behalf of the class and, in his papers, he denies the existence of any conflicts of interest with absent class members.  See Memon Mem. at 10, DE #9-2 ("There is no antagonism between the interests of Memon and those of the Class, and his losses demonstrate that he has a sufficient interest in the outcome of this litigation.").

### D.     Rebuttal Evidence

With respect to the second stage of the inquiry, only Saad has opposed Memon's motion to be appointed lead plaintiff—an opposition that he later retracted voluntarily.  See generally Saad Opp., DE #12; Saad Non-Opposition, DE #13.  In any event, as discussed above, Saad's (withdrawn) concerns proved to be unavailing: the Court has satisfied itself that Memon's loss is bona fide, and the greatest suffered by any movant.  Thus, Saad failed to provide the "exacting proof needed to rebut the PSLRA's presumption."  In re Facebook, Inc., IPO Sec. & Derivative Litig., 288 F.R.D. 26, 40 (S.D.N.Y. 2012).  As such, the PSLRA's

statutory presumption stands unrebutted, and the Court therefore finds Memon to be the most
adequate lead plaintiff.

## II.     Approval of Lead Counsel

The PSLRA also specifies the procedure to be followed for approving lead counsel in
putative class actions brought pursuant to federal securities laws.  Under the PSLRA, "[t]he
most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to
represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  As is evident from the statutory
language, "the lead plaintiff's right to select and retain counsel is not absolute - the court
retains the power and the duty to supervise counsel selection and counsel retention."  City of
Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc., CV 08-1418 (LDW) (ETB),
2009 WL 10709107, at *5 (E.D.N.Y. Mar. 9, 2009) (quoting In re Luxottica Grp., S.p.A.
Sec. Litig., No. 01–CV–3285, 2004 WL 2370650, at *3 (E.D.N.Y. Oct. 22, 2004)), adopted,
2009 WL 10750336 (E.D.N.Y. Mar. 16, 2009).  Nevertheless, "[t]he Court generally defers
to the plaintiff's choice of counsel, and will only reject the plaintiff's choice … if necessary to
protect the interests of the class."  Rauch v. Vale S.A., 378 F.Supp.3d 198, 211 (E.D.N.Y.
2019) (second alteration in original) (citations omitted); see Brady, 324 F.Supp.3d at 352
("Courts have correctly found that the PSLRA evidences a strong presumption in favor of
approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel
retention." (citation and internal quotations omitted)).  The PSLRA thus makes clear that
courts should interfere with the lead plaintiff's selection and retention of counsel only to
"protect the interests of the class[.]"  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); see Darish, 2021
WL 1026567, at *8; Rauch, 378 F.Supp.3d at 211.

Here, Memon has selected Pomerantz as lead counsel and seeks this Court's approval of that selection.  In assessing a proposed lead plaintiff's selection and retention of counsel to represent a purported class, courts give significant weight to counsel's experience.  See Rauch, 378 F.Supp.3d at 211.  Pomerantz has submitted a 57-page resume in support of its candidacy for lead counsel.  See generally Firm Resume (July 25, 2022), DE #9-8.  Pomerantz's resume sets forth the qualifications and legal experience for more than 40 lawyers employed at the law firm.  See id. at 16-57.  In addition, the Pomerantz resume provides a detailed description of the law firm's extensive credentials and highlights its successful representation of plaintiffs in numerous securities class actions in this Circuit and across the country.  See id. at 2-7 (describing in detail those securities class actions in which Pomerantz obtained a favorable settlement as lead counsel).  Notably, neither Saad in his retracted opposition, nor any other "purported class members[,] have offered any reason why Pomerantz LLP would be ill-equipped to serve as lead counsel in this case."  Darish, 2021 WL 1026567, at *8.  Moreover, numerous other courts in this Circuit have also concluded that, based on Pomerantz's extensive experience, the firm is qualified to serve as lead counsel in similar class actions.  See, e.g., id. at *8-9 (collecting cases approving a movant's selection of Pomerantz as lead counsel).  In sum, the Court agrees with Memon that Pomerantz has "extensive experience in securities litigation and class actions involving issues similar to those raised in" the instant action, as well as "the skill and knowledge necessary to enable the effective and expeditious prosecution" of the instant claims.  Memon Mem. at 12, DE #9-2.  Thus, despite counsel's relatively minor mistakes in preparing Memon's initial submissions (as addressed *supra*), Pomerantz is

21

nevertheless qualified to serve as lead counsel in this matter and is therefore approved to serve as lead counsel.

## CONCLUSION

For the foregoing reasons, this Court appoints Memon as lead plaintiff and approves Pomerantz as lead counsel.  Saad's competing motion is denied as moot.

**SO ORDERED.**

**Dated:**   **Brooklyn, New York**
             **September 19, 2022**

/s/ ***Roanne L. Mann***
**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**